UNITED STATES DSITRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**MISMA RIVERA**,
individually and on behalf of all
others similarly situated,

      Plaintiffs,

v.

**ADAM J. RUBINSTEIN, M.D., P.A.**

      Defendant.

_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Misma Rivera brings this class action against Defendant Adam J. Rubinstein, M.D., P.A. and allege as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiffs' attorneys.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. (the "TCPA"), and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2. To promote its goods and services, Defendant engages in unsolicited text messaging to those who have not provided Defendant with their prior express written consent as required by the FTSA and in violation of the National Do Not Call Registry.

1

3. Defendant's telephonic sales calls have caused Plaintiff and the Class members harm, including violations of their statutory rights, statutory damages, annoyance, nuisance, and invasion of their privacy.

4. Through this action, Plaintiff seeks an injunction and statutory damages on behalf of Plaintiff and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## PARTIES

5. Plaintiff is, and at all times relevant hereto was, a citizen and resident of Broward County, Florida.

6. Defendant is a resident of Miami-Dade County, Florida with its business located in Aventura.

7. Plaintiff is, and at all times relevant hereto was, individuals and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that they were the regular users of the cellular telephone numbers that received Defendant's telephonic sales calls.

8. Defendant is, and at all times relevant hereto was, a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

## JURISDICTION AND VENUE

9. This Court has federal question subject matter jurisdiction over Plaintiffs' TCPA claims pursuant to 28 U.S.C. § 1331.

10. This Court has supplemental jurisdiction over Plaintiffs' FTSA claims pursuant to 28 U.S.C. § 1367.

11. Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state. Defendant initiated and directed

telemarketing and/or advertising text messages into Florida. Specifically, Defendant initiated and directed the transmission of unsolicited advertisement or telemarketing text messages to Plaintiffs' cellular telephone number to sell goods, services or products in Florida. Additionally, Defendant is located in Miami-Dade County, Florida.

13. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTS**

13. Starting on or about February 1, 2022, Defendant sent telephonic sales calls to Plaintiff's cellular telephone number. The following are screenshots of the messages received by Plaintiff:





4

14. As demonstrated by the above screenshots, the purpose of Defendant's telephonic sales call was to solicit the sale of consumer goods and/or services.

15. Specifically, many of the calls specifically mention promotions, new products and sales events.

16. Plaintiff is the regular user of the cellular telephone number that received the above telephonic sales calls.

17. Plaintiff utilizes their cellular telephone numbers for personal purposes and the number is a residential telephone line.

18. Plaintiff was located in Florida when Plaintiff received the above text message calls, and Defendant's violative conduct occurred in substantial part in Florida.

19. Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiffs and the Class members.

20. To transmit the above telephonic sales text message call, Defendant utilized a computer software system that automatically selected and dialed Plaintiffs' and the Class members' telephone numbers.

21. The number used by Defendant to transmit the subject text message solicitations (305-792-7575) is known as a "long code," a standard 10-digit phone number that enabled Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

22. Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS

gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

23. The impersonal and generic nature of Defendant's text message and the fact that it originated from a long-code demonstrates that Defendant utilized a computer software system that automatically selected and dialed Plaintiffs' and the Class members' telephone numbers. The messages also include opt-out instructions like "TextSTOPoptout" which notifies the user how to unsubscribe from communications in a manner in which the software system can understand their command.

24. To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiffs' and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform.

25. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiffs and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

26. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

27. Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

28. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

29. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

30. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

31. Compliance with the FTSA will not result in Defendant having to cease its business operations.

32. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

33. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

34. Because a substantial part of Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

35. The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

36. The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

37. The Platform also has an auto-reply function that results in the automatic transmission of text messages.

38.     Plaintiffs never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiffs' cellular telephone number utilizing an automated system for the selection and dialing of telephone numbers.

39.     More specifically, Plaintiffs never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection and dialing of telephone numbers.

40.     Plaintiff's cellular telephone number is registered on the National Do Not Call Registry and has been since September of 2018.

41.     Defendant's telephonic sales calls caused Plaintiffs and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

42.     Plaintiffs bring this lawsuit as a class action on behalf of themselves individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The Classes that Plaintiffs seek to represent are defined as:

> **FTSA Class**: **All persons in Florida who, (1) were sent a telephonic sales call regarding Defendant's property, goods, and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiffs.**
>
> **DO NOT CALL REGISTRY CLASS: All persons in the United States who from four years prior to the filing of this action: (1) were sent a text message, prerecorded message or phone call by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of advertising and/or promoting Defendant's products and services.**

43. Defendant and its employees or agents are excluded from the Classes.

**NUMEROSITY**

44. Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to at least 10,000 persons. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

45. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

46. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Class are:

    (a) Whether Defendant initiated telephonic sales calls to Plaintiffs and the Class members;

    (b) Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls;

    (c) Whether Defendant initiated telemarketing calls to telephone numbers listed on the National Do Not Call Registry;

    (d) Whether Defendant is liable for damages, and the amount of such damages.

47. The common questions in this case are capable of having common answers. Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

48. Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

49. Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

### SUPERIORITY

50. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

51. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## VIOLATION OF FLA. STAT. § 501.059
### (On Behalf of Plaintiffs and the FTSA Class)

52. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

53. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

54. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

55. "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

    a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an

11

        automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

        b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

56. Defendant failed to secure prior express written consent from Plaintiffs and the Class members.

57. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiffs and the Class members without Plaintiffs' and the Class members' prior express written consent.

58. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiffs and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

59. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiffs and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiffs and the Class members are also entitled to an injunction against future calls. *Id*.

60. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227(c)
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

61. Plaintiff re-alleges and incorporates the allegations of paragraphs 1-51 as if fully set forth herein.

62. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

63. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

64. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

65. Any "person who has received more than one telephone call within any 12- month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

66. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

67. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf

of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

68.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

### COUNT III
### Injunctive Relief Pursuant to Fla. Stat. § 501.059(10)(a)
### (On Behalf of Plaintiffs and the FTSA Class)

69.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 51 as if fully set forth herein.

70.     Pursuant to section 501.059(10)(a), Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiffs and the FTSA Class members from Defendant's unsolicited calls and practices.

71.     Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiffs and the FTSA Class members.

72.     Plaintiffs and the FTSA Class members suffer irreparable harm if Defendant is permitted to continue its practice of violating the FTSA.

73.     The injuries that the Plaintiffs and the FTSA Class members will suffer if Defendant is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

74.     The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

75. Accordingly, Plaintiffs and the FTSA Class members seek an injunction requiring Defendant to implement policies and procedures to secure express written consent before engaging in any text message solicitations, and to follow such consent requirements.

76. Plaintiffs request for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, pray for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiffs as the representative of the Classes and Plaintiffs' counsel as Class Counsel;

b) An award of statutory damages for Plaintiffs and each member of the Classes as applicable under the FTSA and TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the FTSA and TCPA;

d) An injunction requiring Defendant to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Class;

e) An injunction requiring Defendant to cease all unsolicited call activity without obtaining consent first, cease initiating calls to telephone numbers listed on the National Do Not Call Registry and to cease all activity to individuals who have requested to be removed from Defendant's consent list and to otherwise protect the interests of the Class;

f) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiffs, individually and on behalf of the Classes, hereby demand a trial by jury.

## **DOCUMENT PRESERVATION DEMAND**

Plaintiffs demand that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

DATED: July 8, 2022

                                              Respectfully Submitted,

                                              **HIRALDO P.A.**

                                              */s/ Manuel S. Hiraldo*
                                              Manuel S. Hiraldo, Esq.
                                              Florida Bar No. 030380
                                              401 E. Las Olas Boulevard
                                              Suite 1400
                                              Ft. Lauderdale, Florida 33301
                                              Email: mhiraldo@hiraldolaw.com
                                              Telephone: 954.400.4713

                                              **EISENBAND LAW, P.A.**

                                              */s/Michael Eisenband*
                                              Michael Eisenband
                                              515 E. Las Olas Boulevard, Suite 120
                                              Ft. Lauderdale, Florida 33301
                                              Michael Eisenband
                                              Florida Bar No. 94235
                                              MEisenband@Eisenbandlaw.com
                                              Telephone: 954.533.4092
                                              *Counsel for Plaintiff*